IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDALL C. STEPHAN, JR.,<br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social Security<br>Administration,<br>    Defendant. | CIVIL ACTION NO. 06-2261 |

**M E M O R A N D U M   &   O R D E R**

Katz, S.J.                                                                                                                                    November 15, 2006

       Plaintiff Randall C. Stephan, Jr. brings this suit against Defendant Jo Anne B. Barnhart, in her capacity as Commissioner of the Social Security Administration ("SSA"), seeking review of an administrative denial of disability benefits, pursuant to 42 U.S.C. § 405(g). Plaintiff claims that the Administrative Law Judge's ("ALJ") decision denying Plaintiff Social Security disability benefits (under Title II of the Social Security Act) was both legally erroneous and not supported by substantial evidence, and that it therefore must be reversed. Now before the court are Defendant's Motion for Summary Judgment (Docket No. 10) and "Plaintiff's Brief and Statement of Issues in Support of Request for Review" (Docket No. 9). For the reasons set forth below, the court will affirm the ALJ's decision,

grant Defendant's Motion for Summary Judgment, deny Plaintiff's Request for Review, and enter judgment in favor of Defendant and against Plaintiff.

### I.  Summary of Facts

Plaintiff was born on December 2, 1973.  He is a high school graduate.  His reported work history lists 27 separate jobs from 1991 (when he graduated from high school) to October 19, 2003 (the date he alleges as the onset of his disability after a car crash).  See Transcript of Record at 89-96.  The longest he worked at any one job was for three years as a landscaper for a lawn and tree service.  Plaintiff originally filed an application for Social Security disability and Supplemental Security Income benefits on March 3, 2004, id. at 48, claiming disability because of low back and shoulder pain, anxiety, depression, panic attacks, lumbar herniated and bulging discs. and neck strains and spasms.  This application was denied initially on May 4, 2004, with the SSA concluding that Plaintiff was able to return to his previous job as a car wash attendant.

Plaintiff then filed a request for a hearing on July 6, 2004.  Id. at 22-23.  Plaintiff's hearing was held in April 21, 2005.  In a decision dated May 11, 2005, the ALJ denied Plaintiff's claim.  Id. at 12-25.  Plaintiff filed a Request for Review of Hearing Decision/Order on July 11, 2005 and requested a copy of the tape of the

hearing. Id. at 10-11. On August 22, 2005, Plaintiff received a tape of the hearing. Id. at 192-93. By letter dated September 16, 2005, Plaintiff requested additional time to brief Plaintiff's Request for Review to the Appeals Council, because the tape of the hearing was incomplete. Id. at 190, 194-95. After receiving a complete, written transcript of the April 21, 2005 hearing, Plaintiff submitted a letter in support of his Request for Review to the Appeals Council on November 7, 2005. Id. at 197-207. On March 24, 2006, the Appeals Council denied Plaintiff's Request for Review. Id. at 4-6. Plaintiff thereafter timely commenced this action pursuant to 42 U.S.C. § 405(g).

## II. Standard of Review

In reviewing an administrative decision denying benefits in a social security matter, the court must uphold any factual determination made by the ALJ that is supported by "substantial evidence." 42 U.S.C. § 405(g) (2006). While substantial evidence is "more than a mere scintilla," it is not "a large or significant amount of evidence." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citations and quotations omitted); Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). Rather, it is such relevant evidence that would be sufficient to support a reasonable conclusion. Pierce, 487 U.S. at 565. In addition to having substantial

evidence review of an ALJ's findings of fact, this court retains plenary review over the ALJ's application of legal principles. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). As such, even if a decision made by an ALJ is supported by substantial evidence, the court can overturn that decision if it finds that it was based upon incorrect legal standards. Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983).

### III.  Discussion

#### A.  The ALJ's Decision

To be considered "disabled" under the Social Security Act, a claimant must demonstrate his or her inability to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that is expected to result in death or that has lasted or is expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(2)(A) (2006); Stunkard v. Sec'y of Health & Human Servs, 841 F.2d 57, 59 (3d Cir. 1988). In determining whether a claimant is disabled, the ALJ conducts a five-step analysis. 20 C.F.R. § 404.1520(a); Ramirez v. Barnhart, 372 F.3d 546, 550-51 (3d Cir. 2004). The ALJ determines: (1) if the claimant currently is engaged in substantial gainful employment; (2) if not, whether the claimant suffers from a "severe impairment;" (3) if so, whether that

impairment meets or equals any of those listed in 20 C.F.R. Part 404, Subpart P Appendix 1; (4) if not, whether, despite the severe impairment, the claimant still can do work he or she has done in the past (i.e., "past relevant work"); and (5) if not, whether the claimant can do other jobs that exist in significant numbers in the national economy. Ramirez, 372 F.3d at 550-51. If the ALJ makes an affirmative finding at steps one, four, or five, or a negative finding at step two, the claimant is found "not disabled;" if the ALJ makes an affirmative finding at step three, or a negative finding at step five, the claimant is found "disabled." 20 C.F.R. § 404.1520(b)-(f). See also Brown v. Yuckert, 482, U.S. 137, 140-42 (1987). The claimant carries the initial burden of demonstrating by medical evidence that he or she is unable to return to his or her former occupation. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). Once the claimant has done so, the burden shifts to the Commissioner to show the existence of substantial gainful employment the claimant could perform. Id.

      In this case, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 19, 2003, see Transcript of Record at 16, at step two that Plaintiff suffered from "severe" impairment (i.e., "low back and shoulder pain, anxiety, depression, and panic attacks"), id. at 17, at step three that Plaintiff's impairments did not meet or equal any

5

of those listed in 20 C.F.R. Part 404, Subpart P Appendix 1, id., at step four that Plaintiff was "unable to perform past relevant work," id. at 18, and at step five that, in light of his residual functional capacity, Plaintiff "is capable of making a successful adjustment to work that exists in significant numbers in the national economy" (i.e., work as a mail clerk, information clerk, final assembler, or semiconductor bonder).  Id. at 19-20.  The ALJ therefore concluded that Plaintiff had not been "disabled" at any time since his alleged onset date, and that he was not entitled to disability benefits.

### B.  Plaintiff's Argument

In his Request for Review, Plaintiff attacks the ALJ's decision on only one ground - i.e., that the ALJ's conclusion at step five that Plaintiff "is capable of making a successful adjustment to work that exists in significant numbers in the national economy" is not supported by substantial evidence.  More specifically, Plaintiff argues that the ALJ erroneously disregarded testimony from the vocational expert ("VE") that, given certain facts, Plaintiff would not be able to successfully adjust to such work.  Because the court rejects this argument, and because the remainder of the ALJ's decision relies upon correct legal standards and factual findings that are supported by substantial evidence, the court will affirm the ALJ's

decision, grant Defendant's Motion for Summary Judgment, deny Plaintiff's Request for Review, and enter judgment in favor of Defendant and against Plaintiff.

Four aspects of the VE's testimony are at issue here, all of which relate to Plaintiff's ability to successfully adjust to work that exists in significant numbers in the national economy. First, the ALJ posed the following hypothetical to the VE:

> I want you to consider the following: I want you to consider a male individual now 31 years of age. I want you to consider the individual 5'9, 185 pounds, right-handed, 12th grade education. I want you to consider the individual would be limited to no more than light exertional level. I want you to consider the individual to require an occupation in a controlled environment as to temperature and to [INAUDIBLE]. I want you to consider occupations that would provide for sit/stand option. I want you to consider occupations that would not be around heights or hazardous machinery or equipment. I want you to consider occupations that would be low in stress and low in focus and concentration, using the sale [sic] of low, moderate and high. I want you to consider the individual can and does drive, he said once every week or every other week. I want you to consider the individual can and does use the internet as he has testified to. I want you to consider that the individual can sit up to 45 minutes to one hour, can stand one hour to one and one half hours, can walk the dog to the end of the block, which is set forth to be approximately 200 to 300 feet. I want you to consider that the individual uses a cane when he goes outside the house. I want you to consider the individual requires an occupation that would not involve more than occasional contact with the general public. With that first hypothetical, are there occupations for such an individual at the light exertional level?

Transcript of Record at 237-38.  In response to this hypothetical question, the VE testified that Plaintiff could work as a mail clerk[1] or an information clerk.[2]  (When the ALJ expanded the hypothetical to include sedentary occupations, the VE testified that Plaintiff could also would as a final assembler[3] or semiconductor bonder.[4])

       The ALJ then proceeded to ask the VE this second hypothetical question:

> If I were to keep all elements in the hypothetical I have given you, both in light and sedentary, but I were to add to the hypothetical that the individual finds it necessary to lie down on an unscheduled basis for more than one hour, and that this would occur during the workday, the eight hour workday.  What effect would that have upon occupations you set forth in response to my past hypotheticals[?]

Id. at 240.  In responding, the VE testified as follows:

> Well, we're [INAUDIBLE] that.  These are unskilled occupations and they're unskilled because of the hypothetical individual's need to deal with low stress and low focus and concentration and that's why he's

---

[1] The VE further testified that there were about 128,000 mail clerk positions in the United States, about 5,120 in Pennsylvania, and about 920 in the south-central region of Pennsylvania.  Id. at 238.

[2] The VE further testified that there were about 166,000 mail clerk positions in the United States, about 6,600 in Pennsylvania, and about 400 in the south-central region of Pennsylvania.  Id.

[3] The VE further testified that there were about 93,500 final assembler positions in the United States, about 3,740 in Pennsylvania, and about 670 in the south-central region of Pennsylvania.  Id. at 239.

[4] The VE further testified that there were about 68,120 semiconductor bonder positions in the United States, about 2,720 in Pennsylvania, and about 49 in the south-central region of Pennsylvania.  Id.

>limited to sedentary, or unskilled work. At the unskilled work level you do not have the opportunity to lie down for more than an hour in any given workday, at least on a consistent basis before you'll lose your job, so that would preclude sustained work primarily in a competitive environment.

<u>Id.</u>

Thirdly, the ALJ, after confirming that all of Plaintiff's potential jobs would have to be done outside the home, asked the VE this third hypothetical question: "If the individual is unable, as a result of anxiety, to leave the family home, what effect would that have upon the responses you've given?" <u>Id.</u> The VE answered as follows: "That would preclude any occupations I enumerated in the first hypothetical, or with the second part of the first hypothetical with respect to sedentary work, sir. It would preclude activity in a competitive environment at any occupation." <u>Id.</u> at 240-41.

Fourthly, the ALJ posed one more hypothetical question. Plaintiff's Request for Review does not cite the VE's answer to this last question in its argument for reversal of the ALJ's decision, but the court nevertheless will consider whether the ALJ's failure to credit the VE's answer means that the ALJ's decision is not supported by substantial evidence. The ALJ's last hypothetical question was: "And as to pain, if pain would affect the performance, but by more than 20% in productivity, what affect [sic] would that pain have upon the occupations you've set

9

forth?" Id. at 241.  The VE's answer was:  "Then that would have, that would preclude competitive employment, because more than 20% loss in productivity is not tolerated by any employer, particularly at the unskilled work level."  Id.

The VE's answer to the ALJ's first hypothetical question listed four jobs Plaintiff could do in spite of his limited residual functional capacity, yet the VE's answers to the second, third, and fourth hypothetical questions indicated that, if the ALJ credited the facts underlying those hypotheticals, Plaintiff would not be able to successfully adjust to work that exists in significant numbers in the national economy.  Plaintiff's argument understandably points out the tension between these answers and suggests that the ALJ must have erred in disregarding the VE's answers to the second and third hypotheticals.  As will be explained below, Plaintiff's argument fails, because the ALJ did not err in disregarding the VE's answers to these hypotheticals.  Rather, the ALJ properly did so, because he refused to credit the alleged facts underlying those hypotheticals.

### B. The Validity of the ALJ's Reasoning

There are two ways to look at this case.  First, this case can be viewed as an application of the principle that the ALJ may disregard the VE's testimony if he or she discredits the facts underlying the hypothetical question posed to the VE.  See Wright v. Apfel, No. Civ. 00-027-B, 2000 WL 1745131, at *12 n.11 (D.N.H. 2000);

Mercurio v. Sullivan, No. 91-5280, 1992 WL 17425, at *4 (E.D. Pa. Jan. 26, 1992); Davis v. Califano, 439 F. Supp. 94, 99 (E.D. Pa. 1977). Alternatively, this case can be viewed as an application of the principle that the VE's testimony is substantial evidence that supports the ALJ's decision only if it incorporates all of the claimant's impairments *that are supported in the record*. See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004); Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)). Here, Plaintiff argues that the ALJ was required to give weight to the VE's answers to the second and third hypotheticals. His argument fails, though, because the ALJ properly discredited the facts underlying the second and third (and fourth) hypotheticals, thereby allowing the ALJ to disregard the VE's testimony (under the first view), or making it impossible for this court to consider the VE's answers substantial evidence (under the second view).

      Regardless of the line of decisions under which this case falls, the crux of the ALJ's analysis, and therefore of this memorandum, is the validity vel non of the ALJ's refusal to credit the facts underlying the second, third, and fourth hypotheticals (i.e., Plaintiff's alleged need "to lie down on an unscheduled basis for more than one hour . . . during the workday," Plaintiff's alleged inability, "as a result of anxiety, to leave the family home," and Plaintiff's greater than 20% decline in

11

productivity due to pain.  See Transcript of Record at 240-41.).[5]  The ALJ's findings in this regard should be upheld so long as they are supported by substantial evidence, and so long as the ALJ "evaluated all the relevant evidence, explained his reasons for rejecting any such evidence, . . . [gave Plaintiff's] subjective complaints 'serious consideration,' and made specific findings of fact, including credibility, as to [Plaintiff's] residual functional capacity."  Burns, 312 F.3d at 129 (internal citations omitted); see also Rutherford, 399 F.3d at 554.

       Before delving into the record, it is worth clarifying how the ALJ rejected the facts underlying the second, third, and fourth hypotheticals, for he did so indirectly.  If the ALJ had credited these facts, one would have expected to see them reflected in the ALJ's assessment of Plaintiff's residual functional capacity.  See Rutherford, 399 F.3d at 555 (noting that the ALJ properly refused to include certain alleged conditions in his hypothetical questions to the VE where he discounted Plaintiff's claims regarding those conditions in his assessment of her residual functional capacity).  Instead, the ALJ wrote that "[t]he claimant's allegations concerning his symptoms and limitations are not entirely credible and have therefore been given only limited weight in establishing his residual functional capacity."  Id.

---

[5] Plaintiff does not challenge the propriety of the ALJ's first hypothetical question.  See Plaintiff's Request for Review at 6.

at 17.  The ALJ, after evaluating the evidence in the record and explaining his reasons for rejecting Plaintiff's claims, went on to describe Plaintiff's residual functional capacity as follows:

> [T]he undersigned finds the claimant retains the residual functional capacity to lift and carry 10 pounds frequently and 20 pounds occasionally, *sit for about 6 hours in an 8-hour workday, stand and walk for about 6 hours in an 8-hour workday, alternate between sitting and standing at will,* and push and pull as much as he can lift and carry.  In addition, the claimant requires a controlled work environment with relation to heights and working around hazardous machinery, requires low stress work tasks, requires use of a cane outside of the home and should have no more than occasional contact with the public.

Transcript of Record at 18 (emphasis added).  Conspicuously missing from this summary of Plaintiff's residual functional capacity is any mention of Plaintiff's alleged need to lie down on an unscheduled basis for more than one hour during the workday, Plaintiff's alleged inability, as a result of anxiety, to leave the family home, or a greater than 20% decline in Plaintiff's productivity due to pain.  It is therefore clear that the ALJ rejected these contentions.

### 1.  Evidence Regarding Plaintiff's Back Pain (and Its Effect on His Productivity)

The ALJ's rejection of the facts underlying the second and fourth hypothetical questions -- i.e., Plaintiff's alleged need to lie down on an unscheduled basis for more than one hour during the workday and a greater than 20% decline in

Plaintiff's productivity due to pain -- clearly comports with the requirements laid out in the case law. The only affirmative evidence of these conditions is Plaintiff's own testimony at his hearing, see Transcript of Record at 216-25, and, to a lesser extent, Plaintiff's mother's testimony at the same hearing. Id. at 229-34. All the other evidence in the record suggests that Plaintiff is not nearly so physically limited.[6]

---

[6] Plaintiff's medical documentation of his back pain is generally unremarkable. Two visits by Plaintiff to his family physician's nurse practitioner on October 22 and 27, 2003 reveal moderate pain consistent with Plaintiff's then-recent car accident. See Transcript of Record at 153. Plaintiff's two subsequent visits on November 2 and 6, 2003 show that Plaintiff aggravated his back injury by returning to his nursery job, which involved heavy lifting, and improved when he rested. See id. at 150. Plaintiff's physical therapy records from October 28, 2003 to November 28, 2003 show that Plaintiff's back improved when he did the prescribed exercises, but that, in general, Plaintiff lacked the initiative to fully recover. See id. at 138-46. Plaintiff's visits on December 11, 2003 and February 24, 2004, showed no significant changes in his condition. Id. at 152.

Although Plaintiff reported on March 23, 2004 that "he cannot stand . . . sit or do anything consistently because of his chronic back pain," id. at 149, Plaintiff's claim is belied by the January 19, 2004 report of Dr. Craig Johnson, Plaintiff's examining neurosurgeon, which indicates that Plaintiff's condition "continues to improve," that "[Plaintiff's] symptoms are not constant," and that Plaintiff's symptoms "were previously constant." Id. at 119. At that time, Dr. Johnson evaluated the condition of Plaintiff's back as follows: "[Plaintiff] ambulates in a normal fashion. No sciatic notch tenderness. Forward flexion performed well. Sitting straight leg raising negative. Pedal pulses intact." Id. at 120; see also id. at 182 (confirming his conclusions following Plaintiff's January 19, 2004 visit -- most significantly, that Plaintiff could still perform sedentary work).

Plaintiff's more recent medical records of his back pain are also unconvincing. The notes of Plaintiff's July 8, 2004 visit with his physician's nurse practitioner say only that "[h]e continues to struggle with some back pain," id. at 179, and the notes of his October 1, 2004 visit say his back pain "began when he had to stop taking Vioxx because it was taken off the market." Id. at 178. The notes of his November 23, 2004 visit say that he "[had] no difficulty with walking, sitting, standing, sleeping," though he claimed "he [couldn't] lift anything without pain." Id. at 177.

(continued...)

Therefore, the ALJ's rejection of these contentions,[7] and his consequent finding that Plaintiff "retains the residual functional capacity to lift and carry 10 pounds frequently and 20 pounds occasionally, sit for about 6 hours in an 8-hour workday, stand and walk for about 6 hours in an 8-hour workday, alternate between sitting and standing at will," id. at 18, are supported by substantial evidence. See Rutherford, 399 F.3d at 555 (finding that the ALJ's hypothetical question to the VE adequately reflected the plaintiff's credibly established limitation where the plaintiff's claims were contradicted by other evidence); Burns, 312 F.3d at 129-30 (upholding the

---

(...continued)
      Plaintiff's last two contacts with his health care provider are the most telling. On February 22, 2005, Plaintiff discussed his situation in depth with his physician's nurse practitioner. After hearing Plaintiff's most recent complaints, the nurse practitioner thought that Plaintiff was "very legitimate in his complaints." Id. at 184. However, this nurse thought Plaintiff should pursue physical therapy, pain management, or even surgery, rather than resign himself to permanent disability. See id. at 185 ("I also explained to him and his mother that I believe there is work that [Plaintiff] can do. I do not believe he should be disabled permanently."). On April 9, 2005, this nurse wrote a letter, at Plaintiff's request, to help Plaintiff obtain Social Security disability benefits, but even this letter poured water on Plaintiff's disability claims. See id. at 176 ("I have recommended physical therapy and a back rehabilitation program. . . . I believe [Plaintiff] would benefit from a structured treatment program that will give him new job skills that could get him functioning again.").

[7] In implicitly rejecting Plaintiff's testimony regarding these two conditions, the ALJ relied specifically on the January 19, 2004 report of Dr. Craig Johnson, several emergency room visits that predated Plaintiff's October 19, 2003 car accident, Plaintiff's November 26, 2003 x-rays (which indicated only minor spinal irregularities), and the notes of Plaintiff's November 23, 2004 doctor's office visit, as well as the facts that "the medical record fails to establish that the claimant has required significant ongoing treatment other than conservative treatment for his back pain, and that there are no current records showing recent complaints of related symptomology." Transcript of Record at 18.

ALJ's residual functional capacity assessment where the plaintiff's claims were contradicted by other evidence).

### 2. Evidence Regarding Plaintiff's Anxiety

The ALJ's rejection of the facts underlying the third hypothetical question -- i.e., Plaintiff's alleged inability, as a result of anxiety, to leave the family home -- also comports with the requirements laid out in the case law. The strongest affirmative evidence of this condition is Plaintiff's own testimony at his hearing, see Transcript of Record at 227-28, and, to a lesser extent, Plaintiff's mother's testimony at the same hearing. Id. at 229-34. Almost all the other evidence in the record suggests that Plaintiff's is not nearly so psychologically limited.[8] Therefore, the

---

[8] Plaintiff's medical documentation of his anxiety and related mental illnesses is as unconvincing as his documentation of his back pain. Prior to his car accident on October 19, 2003, Plaintiff reported at his August 6, 2003 doctor's office visit that his anxiety/depression was "feeling much better on the Paxil CR without complaints of side-effects." Transcript of Record at 151. Plaintiff's office visits on November 2 and 6, 2003 make only passing references to his panic attacks and general anxiety, see id. at 150, and the notes of his February 24, 2004 visit indicate only that "[h]is anxiety and depression are not improved with the higher dose of Paxil." Id. at 152. At his March 23, 2004 visit, Plaintiff reported worsening anxiety, but the nurse practitioner who met with Plaintiff wrote:  "I told him I did not think his anxiety should make him disabled." Id. at 149.

Plaintiff's April 22, 2004 Psychiatric Review by Salvatore Cullari, Ph.D. was especially skeptical of Plaintiff's claims of mental disability. Dr. Cullari wrote that "[c]urrent evidence does not indicate a serious mental impairment at this time," that "[Plaintiff's] allegations are only partially credible," and that "[Plaintiff's condition] would not prevent him from working." Id. at 170.

Plaintiff's more recent medical records of his anxiety are more troubling, but also ultimately unconvincing. On April 29, 2004, Plaintiff reported "increasing anxiety" to his

(continued...)

16

ALJ's rejection of this contention,[9] and his consequent finding that Plaintiff retains the residual functional capacity to work outside his home, in a controlled environment, on low stress tasks, with a cane, and away from heights, hazardous machinery, and the public (most of the time), see Transcript of Record at 18, are supported by substantial evidence.  See Rutherford, 399 F.3d at 555; Burns, 312 F.3d at 129-30.

## IV.  Conclusion

---

(...continued)
doctor's nurse practitioner, id. at 180, and on July 8, 2004, he reported having a panic attack almost every day.  Id. at 179.  On August 17, 2004, Plaintiff reported being "unable to leave his home," id., but by October 1, 2004, the date of his next office visit, he was "feeling a little bit better" and "able to get out of the house."  Id. at 178 (also noting that Plaintiff "look[ed] better than I have seen him [for] about a year").  Plaintiff's November 23, 2004 office visit revealed a slight worsening of his anxiety, but still allowed his nurse practitioner to describe him as relatively normal.  See id. at 177 ("Mood reported as still anxious, depression is better, affect appropriate to conversation, judgement [sic] appears rational, no signs of hallucinations, delusions, suicidal or homicidal ideations.").

   As with Plaintiff's back pain, Plaintiff's last two contacts with his health care provider cast further doubt on the validity of his claims.  The notes of Plaintiff's February 22, 2005 visit with his doctor's nurse practitioner reveal persistent anxiety attacks, but also the nurse's opinion that Plaintiff's anxiety would decrease if he sought psychotherapy and job retraining (which Plaintiff claims he cannot afford).  Id. at 184-85.  The same nurse's letter dated April 9, 2005 and written in support of Plaintiff's disability claim, repeats this recommendation while also strongly suggesting that Plaintiff is not house-bound.  Id. at 176.

[9] In implicitly rejecting Plaintiff's testimony regarding this condition, the ALJ relied specifically on the notes of Plaintiff's July 8, October 1, and November 23, 2004 doctor's office visits, as well as the April 22, 2004 Psychiatric Review by Salvatore Cullari, Ph.D.  See Transcript of Record at 18.

The ALJ's decision denying Plaintiff's eligibility for disability benefits will be affirmed, because the ALJ properly concluded at step five that Plaintiff is capable of making a successful adjustment to work that exists in significant numbers in the national economy, based on his evaluation of the record, including the VE's answers to four hypothetical questions.  The ALJ properly relied on the VE's answer to his first hypothetical, and properly disregarded the VE's answers to the other hypotheticals, because he credited the facts underlying the first hypothetical and discredited the facts underlying the other hypotheticals.  In doing so, the ALJ relied on substantial evidence, evaluated all the relevant evidence, explained his reasons for rejecting and crediting the evidence, gave Plaintiff's subjective complaints serious consideration, and made specific findings of fact, including credibility, regarding Plaintiff's residual functional capacity.  See Rutherford, 399 F.3d at 554; Burns, 312 F.3d at 129.  Therefore, the court will grant Defendant's Motion for Summary Judgment, deny Plaintiff's Request for Review, and enter judgment in favor of Defendant and against Plaintiff.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RANDALL C. STEPHAN, JR.,**<br>Plaintiff,<br><br>v.<br><br>**JO ANNE B. BARNHART,**<br>**Commissioner of Social Security,**<br>Defendant. | **CIVIL ACTION NO. 06-2261** |

### O R D E R

**AND NOW,** this 15th day of November, 2006, upon consideration of Defendant's Motion for Summary Judgment (Docket No. 10) and "Plaintiff's Brief and Statement of Issues in Support of Request for Review" (Docket No. 9), it is hereby **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**, and that Plaintiff's Request for Review is **DENIED**. The Administrative Law Judge's ("ALJ") decision is **AFFIRMED**. Judgment is entered in **FAVOR** of Defendant and **AGAINST** Plaintiff.

BY THE COURT:

/s/ Marvin Katz
_____
**MARVIN KATZ, S.J.**